Matter of Donovan Z. (2005 NY Slip Op 50160(U))

[*1]

Matter of Donovan Z.

2005 NY Slip Op 50160(U)

Decided on February 14, 2005

Family Court, Monroe County

Kohout, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 14, 2005

Family Court, Monroe County
In the Matter of DONOVAN Z. A Person Adjudicated to be a Juvenile Delinquent
E-05410-03/04B

Derek J. Jackson, Esq.
Attorney for Petitioner
New York State Office of Children and
Family Services
Mary Elizabeth Feindt, Esq.
Law Guardian for Respondent
Kimberly V.
Parent

Joan S. Kohout, J.
A petition was filed on December 9, 2004 by the New York State Office of Children and Family Services ("OFCS") requesting an extension of placement and a permanency hearing for the respondent Donovan Z. (dob 12/12/88). The respondent appeared with his law guardian and parents and opposed the petition.
A hearing was held on January 19, 2005 at which time the petitioner called one witness, James Frangione., a Youth Development Counselor at Louis Gossett Residential Center. The respondent testified on his own behalf and his mother also testified in support of the respondent's request for release. Additionally, records of the OCFS concerning the respondent were received into evidence as law guardian's exhibit "C". Pending the submission of closing remarks by counsel and the decision of the court, a temporary extension of placement was granted for thirty days as permitted by Family Court Act §355.3 [5].
Legal Background
The respondent was originally charged with a designated felony resulting from a transfer from criminal court. The respondent admitted to Petit Larceny in satisfaction of all charges stemming from a robbery occurring on February 22, 2003. On June 9, 2003 the respondent was [*2]placed with OCFS for twelve months at the limited secure level of care (see Family Court Act § 353.3 [3][b]).
On December 3, 2003 OCFS filed a petition requesting a permanency hearing and an extension of placement for twelve months (see Family Court Act §§ 355.3; 355.5). The respondent and his parent consented to the extension of placement until February 17, 2005 with a permanency goal of return to parent.

Findings of Fact
When the respondent was first admitted to OCFS in June 2003 he went through an extensive assessment (see exhibit "A" Youth Classification Screen Summary and Attachments) and was determined to be in need of mental health services, substance abuse treatment and special education services. It was noted that the respondent had five previous psychiatric admissions, a residential stay at Baker Victory Services and special education services through Halpern Learning Center in Rochester. His recidivism risk score was set at "30 [very high]" He was assigned to Highland Residential as of July 2, 2003.
While at Highland Residential, the respondent received numerous rule violations [FN1]. On August 7, 2004 the respondent choked a staff member at Highland resulting in a level 3 violation, a transfer to a new facility and a 90 day hold on this release. The respondent admitted during his testimony that he was out of control during the incident on August 7, 2004 and testified that the staff member could have pressed charges against him but chose to "give him a break" and just have him sanctioned by OCFS and transferred to another facility.
On August 13, 2004 the respondent was transferred to Louis Gossett Residential. James Frangione has been the respondent's Youth Development Counselor ("YDC") since his arrival at Gossett. Since he has been at Gossett, the respondent has received eight "write ups" for failing to follow staff directives, fourteen level 1 violations and one level 2 violation for writing gang symbols. The respondent has difficulty with peer relations and impulsive behavior. There has been some improvement in his behavior since he began taking medication early in December 2004, but according the respondent's record (exhibit "C") he continued to have behavior write ups through December 2004 and January 2005.
Mr. Frangione testified that the Donovan needs to work on controlling his impulsive behavior and needs to seek advice and feedback from staff. Donovan continues in mental health counseling with Ms. King and needs to cooperate with taking his medication. Additionally, the respondent participates in group counseling and individual counseling with Mr. Frangione. Donovan has regular contact with his family through phone calls and visits. At least one family meeting has occurred at Gossett with the mental health counselor and family advocate (see exhibit "C").
 The permanency planning goal is for Donovan to return to his mother's home. In order for OCFS to recommend the respondent's return home with aftercare services, the family home needs to be investigated and approved and the respondent needs to score high enough on the [*3]Residential Behavior Assessment or "RBA" to warrant release. The last RBA which is contained in exhibit "C"was completed on December 3, 2004 at which time the respondent's score resulted in a no release determination. The next RBA is scheduled for February 2005.
Both the respondent and his mother request that the petition for extension of placement be denied and that the respondent be released home. Ms. V. acknowledges that she had problems with drug abuse in the past, but reports that she has completed substance abuse treatment at Evelyn Brandon and is prepared for her son to return home. Ms. V. continues in mental health treatment. To her credit, Ms. V. accepts responsibility for many of her son's problems noting that "Donovan did what he saw." If the respondent were returned home, Ms. V. would arrange for mental health care for her son through her treatment provider. Ms. V. said that she supports the proposal to have the respondent reach his RBA score before release, but also said that she opposes the extension of placement.
Discussion
Family Court Act § 355.3 permits the court broad discretion in determining whether
placement of a youth adjudged to be a juvenile delinquent should be extended for periods of up to one year. In making the decision whether to grant an extension of placement the court must consider, where appropriate, whether reasonable efforts were made to safely return the respondent home (see Family Court Act § 355.3 [4][i]).
The testimony and exhibit presented support a finding that it would be in the best interests of the respondent and the community for the respondent to finish the program at Gossett and then to receive aftercare supervision through OCFS (see Matter of Ashanti W., 242 AD2d 539 [2nd Dept 1997]). Moreover, an extension of placement will afford the respondent time to receive the additional mental health and behavior counseling he needs and to demonstrate that he is willing to continue to take this medication (see Matter of Miguel F., 178 AD2d 1026 [4th Dept 1991]).
Since the last extension of placement, Donovan has been violent toward staff and peers and could well have been charged with a new juvenile delinquency offense had facility staff not been lenient toward him. While he seems to be benefitting from the current medication regime and mental health counseling, Donovan has yet to score high enough on the Residential Behavior Assessment to warrant release in accordance with OCFS guidelines. The counseling and services that have been provided by OCFS, including substance abuse counseling, mental health and behavior counseling, special education, structured supervision and family contacts constitute reasonable and appropriate efforts to prepare the respondent to safely return to his mother's home. Unfortunately, the respondent continues to need structured supervision and treatment before he will be ready to return home and rejoin the community.
Also relevant here is the nature of the respondent's offense, which was a misdemeanor reduction from a designated felony petition that had been transferred from criminal court. In this context, the respondent's inability to control his temper and impulsive behavior presents a considerable risk to the community. Hopefully, continued counseling and supervision will assist the respondent to make better decisions in his life and prepare him for release.
The court also makes the following findings consistent with the petitioner's request for a permanency hearing (see Family Court Act §355.5). Although the statute does not require holding a permanency hearing when a youth is placed in a limited secure facility (see Family [*4]Court Act §355.5 [3]), there is no prohibition from conducting a permanency hearing in this case. Moreover, if the respondent were to be transferred to a non-secure facility during the term of the placement order, having a permanency hearing now will assure that there is no lapse in the required permanency review schedule.
 The testimony and proof presented by the petitioner support a finding that the permanency planning goal should properly be return to parent. Ms. V. has completed substance abuse treatment and continues to attend mental health counseling. She has accepted responsibility for many of her son's problems and is committed to helping him in any way she is able. Ms. V. has accepted assistance from the OCFS Family Advocate and now volunteers to help other parents whose children are in placement.
OCFS has provided very appropriate and helpful services to the respondent and his family all aimed at promoting the goal of return to parent. The services provided include substance abuse treatment, mental health and behavior counseling, special education services and structured supervision. Additionally, the family has regular phone contact with the respondent and occasional visits, which have included family meetings with the respondent's counselors. With the exception of the substance abuse treatment, which the respondent has completed, the services continue to be necessary to move forward with the goal of return home.
It is, therefore, ordered that the petition to extend placement is granted and the respondent's placement with the New York State Office of Children and Family Services shall be extended until February 13, 2006.
If the respondent remains in foster care, the Office of Children and Family Services shall file a petition requesting a permanency hearing not later than sixty days before February 13, 2006 and the hearing shall be concluded no later than February 13, 2006.
Signed at Rochester, New York on the 14th day of February, 2005.
________________________________JOAN S. KOHOUT
Family Court Judge
NOTICE
PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL MUST BE TAKEN WITHIN THIRTY DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, THIRTY-FIVE DAYS FROM THE MAILING OF THE ORDER TO THE APPELLANT BY THE CLERK OF THE COURT, OR THIRTY DAYS AFTER SERVICE BY A PARTY OR LAW GUARDIAN UPON THE APPELLANT, WHICHEVER IS EARLIEST.

TO THE PARENTS: THE NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES MAY BE REQUIRED BY LAW TO FILE A PETITION TO TERMINATE [*5]YOUR PARENTAL RIGHTS IF AT ANY TIME YOUR CHILDREN REMAIN IN FOSTER CARE FOR FIFTEEN (15) OUT OF THE PREVIOUS TWENTY-TWO (22) MONTHS.
Footnotes

Footnote 1:Exhibit "C" contains many "Activity/Rule Violation/Incident Report" forms describing the respondent's infractions, including physical fights with peers, threatening and cursing staff, poor behavior in school and failure to follow staff directions. Level 1 rule violations are the least serious infractions and level 3 violations are the most serious.